**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| MUNUSAMY KANDASAMY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ADVANCED SOFTWARE | ) |
| SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**Case No. 1:18-cv-00029 (AJT-TCB)**

**MEMORANDUM IN SUPPORT OF ASSYST'S MOTION TO COMPEL LIMITED DISCOVERY AND TO STAY DUE TO FRAUD UPON THE COURT**

## Table of Authorities

**Cases**

*Amerisource Corp. v. Rx USA Int'l Inc.,* No. 02-CV-2514, 2010 WL 2730748 (E.D.N.Y. July 6, 2010) ................................................................................................................ 15

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) ................................................ 11, 12, 13

*Benjamin v. BWIA Airlines*, No. 07-20017-CIV, 2009 WL 10667416 (S.D. Fla. Jan. 13, 2009)  13

*Benjamin v. BWIA Airlines*, No. 07-20017-CIV, 2009 WL 783353 (S.D. Fla. Mar. 24, 2009) ... 13

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) ................................................................ 2, 12

*Davis v. Crescent Elec. Co.,* No. CIV 12-5008, 2016 WL 1625291 (D.S.D. Apr. 21, 2016) 13, 16

*Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.,* 230 F. Supp. 3d 896 (N.D. Ill. 2017) ............................................................................................................ 13

*Holmes v. Wal-Mart Stores E., L.P.*, No. 1:10CV75, 2011 WL 1842868 (E.D. Va. Apr. 27, 2011) ................................................................................................................ 15, 16

*In re Grand Jury Subpoena*, 870 F.3d 312 (4th Cir. 2017) ............................................... 20

*In re White*, No. 2:07CV342, 2013 WL 5295652 (E.D. Va. Sept. 13, 2013) ............................ 17

*Int'l Med. Grp., Inc. v. Walker,* No. 1:08-CV-923-JMS-TAB, 2011 WL 1752101 (S.D. Ind. May 9, 2011) ............................................................................................................ 20

*Malone v. Weiss*, No. CV 17-1694, 2018 WL 3656482 (E.D. Pa. Aug. 2, 2018) ................. 14, 17

*Manez v. Bridgestone Firestone N. Am. Tire*, LLC, 533 F.3d 578 (7th Cir. 2008) .................... 17

*Neal v. IMC Holdings, Inc.*, No. 1:06-CV-3138-WSD-AJB, 2009 WL 10669622 (N.D. Ga. Mar. 31, 2009) ............................................................................................................ 13, 16

*New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.,* 432 F. App'x 25 (2d Cir. 2011) ................................................................................................................ 12

*Peskoff v. Faber*, 251 F.R.D. 59, 61-62 (D.D.C. 2008) ................................................... 23

*Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867 (E.D. Mich. 2017) ................................................................................................................ 13

*Pope v. Fed. Exp. Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990) ..................................... 14

*Pope v. Fed. Exp. Corp.*, 49 F.3d 1327 (8th Cir. 1995) ............................................... 14

*REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984 (N.D. Ill. 2005) ................................... 14

*Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425 (S.D.N.Y. 2002)............................................... 15

*Secrease v. W. & S. Life Ins. Co.,* 800 F.3d 397 (7th Cir. 2015) ........................................... 12, 13

*Suntrust Mortg., Inc. v. AIG United Guar. Corp.,* No. 3:09CV529, 2011 WL 1225989 (E.D. Va. Mar. 29, 2011)............................................................................................................. passim

*Tesar v. Potter*, No. CIVA 9:05-00956 SB, 2007 WL 2783386 (D.S.C. Sept. 21, 2007)............ 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| MUNUSAMY KANDASAMY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 1:18-cv-00029 (AJT-TCB)** |
| ADVANCED SOFTWARE | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF ASSYST'S MOTION TO COMPEL LIMITED DISCOVERY AND TO STAY DUE TO FRAUD UPON THE COURT

### I.   INTRODUCTION

A fraud has been committed on this Court.[1] From the inception of this case, Plaintiff Munusamy Kandasamy has used falsified evidence that goes to the heart of his breach of contract action. Plaintiff attached to the Complaint a completely fake "email." He did so in support of his untruthful allegation that he, during his employment with Assyst, repeatedly requested that Assyst provide information concerning his stock options to no avail.

To make matters worse, Plaintiff produced in discovery more doctored emails that go to the merits of this action. For example, Plaintiff produced an "email" whereby an Assyst officer allegedly emailed him: "Let us meet today at 8:30 am to catch up on all the opportunities **and discuss your stock options question**" (emphasis added). In reality, the Assyst officer stated only

---

[1] The Motion and this Memorandum are in satisfaction of Assyst's counsel's rules under the Virginia State Bar Rules of Professional Conduct. *See* Rule 3.3(d) ("A lawyer who receives information clearly establishing that a person other than a client has perpetrated a fraud upon the tribunal in a proceeding in which the lawyer is representing a client shall promptly reveal the fraud to the tribunal").

"[l]et us meet today at 8:30 am to catch up on all the opportunities." The fabricated inclusion of the phrase "and discuss your stock options questions" was injected to bolster Plaintiff's case by making it seem like the parties were discussing stock options when in fact they were not.

The falsification of critical documents has spoiled and polluted the truth-finding function of this proceeding. The "very temple of justice has been defiled." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (citation omitted). In circumstances like these, swift and severe sanctions are warranted. Plaintiff, however, has denied committing any fraud and falsifying or doctoring documents he has produced in this case.[2] He may intend to blame his former co-plaintiff, Rajender Salgam, for this unconscionable act.

Although case law shows that sanctions may be warranted regardless of whether Plaintiff actually fabricated the documents at issue, the precise facts and circumstances of this egregious fraud are relevant in determining the proper sanctions that should be imposed. Moreover, this Court has an interest in finding out more concerning the gravity of this scheme. Consequently, the prudent approach at this juncture is to permit discovery into the fraud to find out what precisely happened and to stay all other aspects of this matter until discovery has been completed and any sanctions have been imposed.

## II.   STATEMENT OF FACTS

### A.  Factual Background

This action involves a single breach of contract count that spans back to October 2009. Plaintiff alleges that Assyst breached his employment agreement (the "Employment Agreement") by allegedly failing to grant him stock options. *See, e.g.,* Compl. ¶¶ 126-128.

---

[2] Plaintiff has not expressly admitted or denied making intentional use of documents he knew to be false or previous knowing of the falsity of the documents.

The parties do not dispute that on October 30, 2009, Plaintiff, previous co-plaintiff Rajender Salgam, and representatives of Assyst attended the closing of the purchase of the assets of Plaintiff's and Salgam's company, Leading Consultants, Inc. ("LeadingC").[3] The closing took place at Assyst's office in Sterling, Virginia. The parties also do not dispute that, at the closing, Plaintiff received and executed, *inter alia*, the Employment Agreement and that the Employment Agreement addresses the stock options that are at issue in this controversy.[4]  As a result of the deal, Plaintiff, who was an officer of LeadingC, became the Senior Vice President of Unified Communications at Assyst.

The parties dispute, however, *when* Plaintiff received additional information concerning the stock options granted in the Employment Agreement. Among this disputed information is information that that the stock options expired on October 29, 2012.  Assyst has testified that it provided Plaintiff the disputed information concerning his stock options at the closing on October 30, 2009, as well as additional times thereafter.

In contrast, Plaintiff claims that the disputed information was not provided at the closing. Rather, Plaintiff alleges that, shortly after the closing, he began asking Assyst for the disputed

---

[3] The closing was also attended by LeadingC's broker, Mark Gaeto.

[4] Specifically, the Employment Agreement provides, in part, that:

> As his compensation for all services rendered to [Assyst] during the Term[4] of this Agreement, in whatever capacity rendered, [Plaintiff] shall have and receive:
>
> . . . .
>
> [Plaintiff] shall also receive stock options totaling 200,000 shares of [Assyst] pursuant to the terms of [Assyst's] Stock Option Plan at the $.82 / share vested over 2 years (34% vested upon closing, 33% at the of 1st and 33% at the end of 2nd year).

Employment Agreement § 6.

3

information concerning his stock options and that Assyst refused to give him the information for years despite his alleged "repeated requests." *See, e.g.,* Compl. ¶¶ 86-87 ("Similar to Mr. Salgam, [Plaintiff] made repeated requests to exercise his Non-Qualified Stock Option during the first four years of his employment at Assyst . . . .  In response to each of these requests, executives at Assyst, including Kumar, represented to [Plaintiff] that the documents required for him to exercise his Non-Qualified Stock Option would be forthcoming"). Plaintiff alleges that it was not until September 2013 that he received the disputed stock option information, including their expiration date. *See, e.g.,* Compl. ¶ 88 ("Finally, in September of 2013, after nearly four years of attempting to exercise his Non-Qualified Stock Option, Vinay Shirke ('Shirke'), Chief Information Officer at Assyst, provided [Plaintiff] with the Corporation's Stock Option Plan and [Plaintiff's] Non-Qualified Stock Option Grant"). Plaintiff claims that because the options had expired when he received the disputed information, Assyst breached the Employment Agreement. *See* Compl. ¶¶ 89, 127.

Assyst denies Plaintiff's claims that it avoided providing to him information concerning his stock options from October 2009 through September 2013.  In fact, Assyst denies that Plaintiff even broached the subject of his stock options for the period between the closing and when he emailed Assyst's Human Resources Manager Judith Bounacos in August 2013.[5]

Former co-plaintiff Salgam was discharged from Assyst on January 7, 2013, after Assyst discovered that he had embezzled $14,7000 in company funds. He was prosecuted and convicted of petit larceny as a result of his misconduct, receiving, *inter alia,* thirty days of active jail time

---

[5] The three declarations submitted by Assyst representatives in support of this Motion, attached hereto collectively as Exhibit 1, all support Assyst's position that Plaintiff did not repeatedly request information regarding his stock options.

and 150 days of suspended jail time. Plaintiff resigned from Assyst on April 15, 2014. Compl. ¶ 100.

**B.  Procedural Background and Allegations Relating to Assyst's Provision of, or Failure to Provide, Information.**

**1.  The Complaint and Current Posture of the Case.**

On January 5, 2018, Plaintiff and Salgam filed the Complaint. (Dkt. 1). The Complaint is teeming with allegations that Plaintiff and Salgam repeatedly requested information concerning their stock options, which Plaintiff and Salgam alleged were effectively denied by Assyst. *See, e.g.,* Compl. ¶¶ 46-48, 53-58, 62-67, 86-88 (all describing alleged occasions where Plaintiff or Salgam asked Assyst about stock options).

This matter is currently scheduled for a jury trial beginning on January 22, 2019. The parties are scheduled to exchange witness and exhibit lists, as well as other pre-trial submissions, by November 16, 2018.  Assyst also intends to move for summary judgment on several grounds.

**2.  Plaintiff prosecutes the bogus theory that Assyst denied him information concerning stock options and is sanctioned for failing to produce discoverable information.**

Throughout discovery, Plaintiff continued to prosecute his claim that Assyst withheld information concerning his stock options despite his request. In his answers to Assyst's interrogatories, Plaintiff averred that he repeatedly was denied information about his stock options to no avail. *See* Answer to Interrogatory 4, dated August 24, 2018 (alleging numerous occasions before August 2013 when Plaintiff allegedly "inquired" about his stock options but was not provided any information).[6]  At his deposition on October 3, 2018, Plaintiff doubled-down on these allegations. For example, Plaintiff testified to times when he allegedly orally asked Assyst CEO

---

[6] The cited excerpt from Plaintiff's interrogatory answers is attached hereto as Exhibit 2.

Sunil Kumar about his stock options prior to September 2013. *See, e.g.,* Pl. Dep. 107:22 – 108:12; 109:6-13; 111:11-112:6; 298:11-19 (stating he asked Kumar for the stock option plan "every time" he saw him).[7]

On August 24, 2018, Plaintiff produced 115 pages of documentation in response to Assyst's requests for production of documents.  Plaintiff produced "emails" that purported to show the Assyst CEO at the time, Sunil Kumar, discussing stock options with the plaintiffs. *See, e.g.,* KANDASAMY 56-57, 60, 76, 78. After receiving a deficiency letter, Plaintiff produced thirty more pages of documentation on September 6, 2018. Because Plaintiff had still failed to provide all responsive correspondence, particularly his exchanges with Salgam, Assyst filed a Motion to Compel the next day. (Dkt. 22). On September 27, 2018, the Motion to Compel was granted and Plaintiff was ordered to pay $750.00 to Assyst for its fees. (Dkt. 32). Since the imposition of the Order to Compel, Plaintiff has produced **over 490 pages of additional documentation**, dwarfing the 145 pages he submitted previously.

Among the newly produced documentation are documents that show (1) that on or about March 28, 2013, he accessed Assyst's private network while he was still an officer of Assyst for the purpose of looking for a document to assist Salgam, who had been discharged a couple months earlier for embezzlement, and (2) that Salgam, a couple weeks later, sent Plaintiff a copy of his own Grant of Non-Qualified Stock Option document that was identical in its terms to Plaintiff's. KANDASAMY 485-495, KANDASAMY 631- 640.[8]  At his deposition, Plaintiff admitted that he and Salgam received the same "deal" when they joined Assyst and provided him with Salgam's stock option information documents on April 18, 2013. Pl. Dep. 97:10-21; 143:7-19 (discussing

---

[7] The cited excerpt from Plaintiff's deposition is attached hereto as Exhibit 3.
[8] KANDASAMY 485-495 and 631-640 are attached hereto as Exhibit 4.

KANDASAMY 631-640). He also admitted that he received his own stock option information documents at least by March 28, 2013. Pl. Dep. 151:19-153:15 (discussing Pl. Dep. Ex. 14, which is KANDASAMY 485-495.).[9] These emails and admissions contradict Plaintiff's assertion that he first received the disputed stock option information in September 2013. *See, e.g.,* Compl. ¶ 90 ("Although [Plaintiff's] Non-Qualified Stock Option Grant is dated October 16, 2009, [Plaintiff] did not receive this document on that date, or at any time prior to September 2013").

### C.  The Fraud is Discovered.

During discovery into apparent misconduct of Salgam and Plaintiff relating to matters other than Salgam's embezzlement, Salgam voluntarily stipulated to his dismissal from this action with prejudice. The dismissal was entered by this Court on September 10, 2018. (Dkt. 26). The plaintiffs' joint counsel withdrew from the case shortly thereafter. As a result, the Court extended the discovery cutoff from September 14, 2018, to October 5, 2018. (Dkt. 28). At the request of Plaintiff, through his new counsel, the Court extended the discovery cutoff again until November 2, 2018, for the purpose of conducting Assyst's Rule 30(b)(6) deposition. (Dkt. 42). Plaintiff noticed Assyst's Rule 30(b)(6) deposition for November 2, 2018.

It was in the course of preparing for its corporate deposition on October 31, 2018, that Assyst discovered the falsified evidence at issue. Assyst accessed an archived server and found evidence that "emails" repeatedly relied on by Plaintiff to support his claim that Assyst failed to provide him information concerning his stock options had been doctored and fabricated out of whole cloth. **These fake "emails" constitute the entire known universe of documentary**

---

[9] The cited references to pages 97, 143, and 151-153 of Plaintiff's deposition are attached hereto as Exhibit 5.

evidence that expressly supports Plaintiff's contention that he inquired about his stock options prior to August 2013.

### 1. The Doctored Emails.

In conducting its review, Plaintiff found that four emails produced by Plaintiff in the course of discovery had been doctored: KANDASAMY 56-57, 60, 76, 78. [10]  To detect the fraud, Assyst compared the .PDF versions of the documents produced by Plaintiff with the native versions found on Assyst's archived server. This chart shows the material differences:

| **Pl. Bates #** | **Email Date** | **Alleged Sender** | **Recipients** | **Doctored Excerpt** | **Actual Excerpt** |
|---|---|---|---|---|---|
| KANDASAMY 56-57, (SALGAM 268) | 8/28/2012 | Assyst CEO Kumar | **To: Salgam, CC: Plaintiff** | Let us meet today at 8:30 am to catch up on all the opportunities and discuss your stock options question. | Let us meet today at 8:30 am to catch up on all the opportunities |
| KANDASAMY 76 | 8/28/2012 | Kumar | **To: Plaintiff, CC: Salgam (see footnote)[11]** | Let us meet today at 8:30 am to catch up on all the opportunities and discuss your stock options question. | Let us meet today at 8:30 am to catch up on all the opportunities |
| KANDASAMY 60 (SALGAM 291) | 7/26/2012 | Salgam | To: Kumar, CC: Plaintiff | Kanda told me that you are in US. Please let us know if you are available today at 2pm. We can meet online via skype. I will update you on MetLife, HealthNet, BNY Mellon and also employee vacation | Kanda told me that you are in US. Please let us know if you are available today at 2pm. We can meet online via skype. I will update you on MetLife, HealthNet, BNY Mellon and others. |

---

[10] These fraudulent emails are attached hereto as Exhibit 6.

[11] The discrepancy in the address section between the 8/28/2012 "email" reflected in KANDASAMY 56-57 and the 8/28/2012 "email" in KANDASAMY 76 are a further testament to their falsification. In reality, the email used to fabricate the fake "email" was "To" Salgam and CC'ed Plaintiff. *See* Exhibit 7 hereto (ASSYST004202).

| | | | | | |
|---|---|---|---|---|---|
| | | | | time issue and how to exercise stock option grants. | |
| KANDASAMY 78 | 5/8/2012 | Kumar | To: Plaintiff, Salgam | I did not see any update in the CRM. We can discuss employee evaluations and stock options as well. | I did not see any update in the CRM as well. |

The actual emails, in .PDF form, are attached hereto as Exhibit 7. The declarations submitted by Assyst further provide evidence of the fraud.

Plaintiff not only produced these emails but repeatedly swore to their legitimacy while under oath. Plaintiff testified falsely regarding these fake "emails" in his interrogatory answers, specifically relying on them as the primary support for his breach-of-contract claim. *See, e.g.,* Answer to Interrogatory 4, dated August 24, 2018 ("During this same period of time, Plaintiff inquired with Kumar about the Non-Qualified Stock Options on two additional occasions over the phone during weekly status calls. See Email from Kumar to Plaintiff dated May 8, 2012, setting up a meeting to discuss employee evaluations and stock options, **KANDASAMY 000078**. See also Email from Kumar to Plaintiff dated August 28, 2012, arranging a meeting to discuss Plaintiff's question about stock options, **KANDASAMY 000076**") (emphasis added).[12] During his deposition on October 3, 2018, Plaintiff again affirmed these emails while under oath. *See, e.g.,* Pl. Dep. 118:17-120:8 (affirming KANDASAMY 78, 56).[13]

### 2. The Fabricated "Email."

---

[12] *See* Exhibit 2.
[13] The referenced deposition excerpt is attached hereto as Exhibit 8.

In addition to detecting "emails" that had been doctored in Plaintiff's production of documents, Assyst found an "email" that was fabricated out of whole cloth. **This "email" was included as the sole "email" exhibit to the Complaint.**[14] (Dkt. 1-4). Specifically, The Complaint alleges that "[i]n an email to Human Resources [Bounacos] dated August 5, 2011, attached hereto as Exhibit D, [Salgam] stated, in relevant part:

> [Assyst CEO] Kumar was in NJ office a few days ago and I informed
> him that I would like to exercise my vested stock options granted to
> me in my offer letter dated oct-30-2009. He told me that I should get
> in touch with HR manager and obtain the forms that need to be filled
> out. Please send these forms and any related documents.

Compl. ¶ 56. Ms. Bounacos allegedly responded to Salgam that she "should have this information sent to him by Monday" but allegedly "failed to provide [Salgam] with the documents requested." Compl. ¶¶ 57-58.

This "email" is a sham, and therefore renders the Complaint a fraud as well. Neither Salgam's "email" nor Ms. Bounacos's "email" ever existed. Assyst's archived server has no record of the alleged "email" exchange. Moreover, elements on the "email" document filed with, and quoted in, the Complaint reveal its manufacture out of whole cloth. Specifically, the signature block for Ms. Bounacos in the fake "email" attached to the Complaint is not the signature that the Assyst email application automatically applied to Ms. Bounacos's emails at the alleged time of the fake "email."  The fake signature states her phone number as "703-230-3113 (phone)" and fax number as "703-230-3123 (fax)." At the time, however, Ms. Bounacos' email signature provided for the following: "703-230-3100 x 2525 (phone)" and "703-230-0640 (fax)." Ms. Bounacos' email signature was not changed to "703-230-3113 (phone)" and "703-230-3123 (fax)" until after

---

[14] The "email" was later produced in discovery as SALGAM 60 and 158.  It is attached hereto as Exhibit 9, along with the excerpt from the Complaint incorporating it.

this "email" was allegedly sent. True and accurate copies of actual emails proving the fake signature block on Exhibit D to the Complaint are attached hereto as Exhibit 10. **Among these emails is an email showing that the 703-230-3123 fax number was not created until November 16, 2011, months after the fake "email" with that number was allegedly sent.**[15]

Within one day of discovering the fraud, Assyst sent notice of it to Plaintiff, through his current counsel, and to Plaintiff's prior counsel.[16] The letter requested, in light of the seriousness of the misconduct at issue, that this case be dismissed with prejudice and that Plaintiff pay Assyst's fees. Plaintiff's counsel responded that "[Plaintiff] denies doctoring or falsifying any documents he has produced in this case." Plaintiff's counsel subsequently claimed that "[Plaintiff] vehemently denies committing any fraud . . . ."  Plaintiff has provided no other substantive response as to his role in the fraud.

### III.    ARGUMENT

A transgression had been made against this Court which must not go unaddressed. *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) (noting that courts have "the power to defend their integrity against unscrupulous marauders" who commit fraud upon the them). Assyst has been gravely prejudiced by having to defend itself against fake evidence that goes to the core of Plaintiff's claims. *Tesar v. Potter*, No. CIVA 9:05-00956 SB, 2007 WL 2783386, at *8 (D.S.C. Sept. 21, 2007) (observing that "dishonest litigants have a distinct advantage over their honest adversaries, for '[t]he victimized opponent winds up . . . consuming substantial resources to respond to and 'undo' the victimizers [sic] lies and distortions'") (citation omitted).

---

[15] The declarations submitted by Assyst personnel Mandal and Bounacos, attached as Exhibit 1, support the sham nature of the fake "email."

[16] A copy of the letter, *sans* its exhibits, is attached hereto as Exhibit 11.

Plaintiff disputes his involvement in the transgression. Although sanctions are warranted, further investigation should be permitted by this Court in order to determine the extent of the fraud and scope of any sanctions. Both this Court and Assyst deserve to find out the full story of what happened. All other aspects of this matter should be stayed until the discovery into the fraud is completed and any corresponding sanctions motions have been decided.

### A. Falsifying critical evidence, as was done in this case, is a grave matter that justifies the severest of sanctions.

Underscoring the importance of further investigation into the newly-discovered fraud is the gravity of the fraud that has occurred. This Court has the inherent power to impose sanctions when a fraud upon the court has occurred, when "the very temple of justice has been defiled," and when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order."[17] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "When a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action." *United States v. Shaffer Equip. Co*., 11 F.3d 450, 462 (4th Cir. 1993).

The fabrication of phony documents to bolster one's case is a "near-classic example" of fraud upon the court. *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989); *see also Secrease v. W. & S. Life Ins. Co.,* 800 F.3d 397, 402 (7th Cir. 2015) ("falsifying evidence to secure a court victory undermines the most basic foundations of our judicial system"); *New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.,* 432 F. App'x 25 (2d Cir. 2011) (falsifying evidence and submitting falsified evidence is sanctionable); *see also Davis v. Crescent Elec. Co.,*

---

[17] Assyst's emphasis in this motion on the Court's inherent authority to punish fraud and abuse should not be construed as a waiver of its rights to seek relief under other applicable rules and authority, such as Federal Rules of Civil Procedure 11 and 37.

No. CIV 12-5008, 2016 WL 1625291, at *3 (D.S.D. Apr. 21, 2016) ("submitting a false discovery document—or fabricating evidence—has been referred to as 'the most egregious misconduct which justifies a finding of fraud upon the Court'") (citation omitted). In addition to constituting a fraud upon the court, the fabrication and use of phony documents also implicates the abuse of judicial process, including spoliation, which are also sanctionable under a court's inherent authority. *See Suntrust Mortg., Inc. v. AIG United Guar. Corp.,* No. 3:09CV529, 2011 WL 1225989, at *18-*19 (E.D. Va. Mar. 29, 2011), *aff'd* 508 F. App'x 243 (4th Cir. 2013) (finding that a fraud upon the court and an abuse of process had occurred due to bogus emails).

Courts have often imposed the severest sanction of dismissal with prejudice when material, fabricated documents have been used. *See, e.g., Secrease*, 800 F.3d at 399, 402 (affirming dismissal when plaintiff asked court to enforce fake arbitration agreement); *Aoude*, 892 F.2d at 1122 (affirming dismissal when fake document attached to complaint); *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 874-876, 878-79 (E.D. Mich. 2017) (ordering dismissal when fake document attached to complaints even when plaintiff claimed doing so was a mistake); *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.,* 230 F. Supp. 3d 896, 914 (N.D. Ill. 2017) (ordering dismissal and awarding fees for using fake email); *Neal v. IMC Holdings, Inc.*, No. 1:06-CV-3138-WSD-AJB, 2009 WL 10669622, at *1 (N.D. Ga. Mar. 31, 2009) (ordering dismissal when plaintiff, *inter* alia, falsely appended "as a mother" to the end of an actual email); *Benjamin v. BWIA Airlines*, No. 07-20017-CIV, 2009 WL 10667416, at *7 (S.D. Fla. Jan. 13, 2009) (ordering dismissal and awarding fees when plaintiff used fabricated documents, including fake email);[18] *Pope v. Fed. Exp. Corp.*, 138 F.R.D. 675, 683 (W.D. Mo.

---

[18] The fees were awarded in *Benjamin v. BWIA Airlines*, No. 07-20017-CIV, 2009 WL 783353 (S.D. Fla. Mar. 24, 2009), with the amount being determined at a later date.

1990), *aff'd in part, vacated in part on other grounds*, 974 F.2d 982 (8th Cir. 1992) (ordering

dismissal when plaintiff used manufactured note to support her harassment claim); [19] *see also REP*

*MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1012 (N.D. Ill. 2005), *aff'd*, 200 F. App'x 592

(7th Cir. 2006) (dismissing third-party complaint, awarding fees, and agreeing "with precedent

finding that when a litigant fabricates critical evidence, the interests of the judicial system militate

strongly in favor of dismissal of the suit so as to deter all litigants from such misconduct in the

future").

In *Malone v. Weiss*, No. CV 17-1694, 2018 WL 3656482, at *6, 9 (E.D. Pa. Aug. 2, 2018),

the court dismissed with prejudice the claims of a husband, wife, and their closely held corporation

when it was found the husband had doctored and fabricated emails in order to "bolster" their case.

Specifically, the plaintiffs claimed that the defendants failed to provide them with certain assets

purchased from a company as required by the asset purchase agreement. *Id.* at *1. The fabricated

emails in part "gave the impression that the [defendants'] refused to hand over files" when this

was not the case. *Id.* at *6-8. The court ruled that the sham emails went to the "heart of the case."

*Id.* at *6.

In this case, Plaintiff similarly contends that Assyst withheld information from him

concerning his stock options despite his repeated requests. The fabricated "emails" give the

impression that Assyst did withhold such information.  Like the bogus emails in *Malone*, the bogus

emails here go to the "heart of the case" and will warrant a severe sanction. Further, *Malone*

demonstrates that, although the nature of Plaintiff's participation in the fraud is relevant, sanctions

can be imposed even if the evidence of his participation in the fabrication scheme is limited.

---

[19] In *Pope*, the court made an award of attorneys' fees. *Pope v. Fed. Exp. Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995).

Even in cases where courts have decided, for a variety of reasons, not to dismiss the bad actor's claims as the result of his misconduct, courts have imposed substantial sanctions. *See, e.g.*, *Suntrust,* 2011 WL 1225989, at *29 (fees awarded where fake emails did not constitute entire known universe of documentary evidence expressly supporting party's contention); *Holmes v. Wal-Mart Stores E., L.P.*, No. 1:10CV75, 2011 WL 1842868, at *6 (E.D. Va. Apr. 27, 2011) (striking claim for compensatory damages attributed to pain and suffering); *Amerisource Corp. v. Rx USA Int'l Inc.,* No. 02-CV-2514, 2010 WL 2730748, at *1-2, 6-7 (E.D.N.Y. July 6, 2010), *aff'd* 432 F. App'x 25 (2d Cir. 2011) (imposing $100,000 in sanctions on party (and non-party) for creating and using fake emails to support its claim after other party had already prevailed in the case despite sanctioned party's and non-party's claim that use of the fake emails was an "innocent mistake"); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444-45 (S.D.N.Y. 2002), *aff'd,* 81 F. App'x 396 (2d Cir. 2003) (fees awarded for using fabricated documents when bad actor's claim had already been dismissed on summary judgment).

**B.   <u>The severity of the fraud that has been committed warrants further investigation.</u>**

It is clear that a grave and serious offense has been committed against this Court that warrants severe sanctions. Rather than sanctioning the fraudulent conduct now, however, this Court should order additional investigation into the specific facts and circumstances of fraud.  The request for further discovery is largely attributable to the fact that this case once involved both Salgam and Plaintiff, rather than just Plaintiff. Plaintiff has contested a certain degree of culpability by denying that he created the sham documents, apparently in preparation for blaming his former co-plaintiff and partner Salgam for the fabrications. Therefore, further investigation is warranted to get to the bottom of the fraud.

The cases cited above where fraud occurred often contain thorough descriptions of the fraud at issue. This is because the facts and circumstances matter when a fraud is committed upon the court and particular sanctions are being considered. The relevance of facts and circumstances are evident in the Fourth Circuit's standard for dismissing a case under a court's inherent authority. *See Shaffer,* 11 F.3d at 462–63 (considering "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney . . . ; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest").

When a credible claim of fraud has been raised, courts have steered the case to find out more information about the fraud at issue. Courts have ordered that additional discovery be had. *See Davis v. Crescent Elec. Co*., No. CIV 12-5008, 2016 WL 1625291, at *2-3 (D.S.D. Apr. 21, 2016) (permitting additional discovery after discovery cutoff into alleged falsity of previously produced email); *Suntrust,* 2011 WL 1225989, *1 (E.D. Va. Mar. 29, 2011) (noting that court previously ordered additional discovery into issue of fake email); *Neal,* 2009 WL 10669622, at *1 (noting that judge permitted parties to conduct additional discovery for sole purpose of determining whether plaintiff had fabricated evidence). Moreover, courts have held evidentiary hearings relating to frauds upon the court, including courts in this judicial district. *Suntrust*, 2011 WL 1225989, at *2 (E.D. Va. Mar. 29, 2011) (three-day evidentiary hearing); *Holmes*, No. 1:10CV75, 2011 WL 1842868, at *3 (E.D. Va. Apr. 27, 2011) (three-day evidentiary hearing); *Neal,* 2009 WL 10669622 at *1 (two-day evidentiary hearing).

Although a serious fraud has been committed upon this Court, the manner in which Plaintiff was involved has not been brought fully to light. Plaintiff denies "doctoring or falsifying any documents he has produced in this case" and "committing any fraud," thereby implicitly blaming Salgam, his former co-plaintiff and partner, or possibly their former counsel. As the case law above illustrates, a party does not need to falsify the evidence at issue to be sanctioned. *See, e.g. Malone*, 2018 WL 3656482, at *8 (imposing sanctions on party when evidence indicated co-party doctored emails); *Suntrust*, 2011 WL 1225989, at *22 (imposing sanctions for willful blindness). Nevertheless, the means by which Plaintiff and any others, including Salgam, were involved in the fraud is relevant to determining the most appropriate sanction and best way to vindicate the truth-finding function of this Court. Whether Plaintiff created the fake "emails," used them knowingly or recklessly, or failed to take proper corrective action are all matters of concern to this Court and the parties to this proceeding.

Further, although Plaintiff's conduct has been the focus of this brief so far, it is not only Plaintiff's involvement that concerns this Court. This Court could also impose sanctions against Salgam, although no longer a party to this matter. *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct"); *In re White*, No. 2:07CV342, 2013 WL 5295652, at *30-31 (E.D. Va. Sept. 13, 2013) (citing cases regarding sanctioning non-party under court's inherent authority). Moreover, Salgam participated in the fraud while he was party to this case and therefore is not a pure "non-party" to this action.

In sum, additional information concerning the fraud that has been perpetrated on this Court is important to determining the best way for this Court to proceed and the sanctions to impose.

17

**C.** **At this juncture, the best way to investigate the fraud is to permit Assyst to conduct discovery into it.**

The additional investigation should consist first of a period where Assyst may conduct limited discovery into the issue of fraud committed upon the Court, including the creation, exchange, communication, use, and storage of, and reliance upon, the fraudulent "emails" identified so far, as well as spoliation by Plaintiff and Salgam and prior communications relating to evidence of the alleged breach of contract or lack thereof. Assyst anticipates that such discovery would include primarily the following:

1. **Interrogatories, Requests for Admission, and Requests for Production of Documents to Plaintiff regarding the fraud at issue, including, without limitation, the creation of, use of, transmission of, reliance upon, and communications regarding the fraudulent documents in question.**

2. **Interrogatories, Requests for Admission, and Requests for Production of Documents to Plaintiff regarding the prosecution of these claims with Salgam.**

   Assyst believes not only that the emails at issue are fraudulent but also that there is no truth supporting Plaintiff's and Salgam's claims that they repeatedly asked Assyst for information related to their stock options. These allegations of fabricated oral conversations are part and parcel to the fabricated emails set forth before this Court. Moreover, it should not be forgotten that Plaintiff already had to be ordered by this Court to produce communications between him and Salgam that he previously improperly withheld and which, when produced, included correspondence damaging to his case. Therefore, Plaintiff may have additional, yet undisclosed, damaging communications with Salgam.

3. **Subpoenas duces tecum concerning the aforementioned topics to Raj Salgam, LeadingC, and Salgam's and Plaintiff's former joint attorney.**

4. **Subpoenas duces tecum concerning the aforementioned topics to Raj Salgam and Salgam's and Plaintiff's respective, former attorneys used to make demands on Assyst in 2013 and 2014, respectively.**

With regard to their former attorneys from 2013 and 2014, Salgam first asserted his stock option claims through counsel in April 2013, and Plaintiff did so in March 2014. Neither attorney attached the fake "emails" to their demand letters.[20] The degree to which the fake "emails" existed (or not) during this time frame is relevant to the fraud. Further, in response to their demand letters at the time, Assyst's counsel did not signal that Assyst had written proof, such as email communications, that the disputed stock option information was provided before the stock options expired, thereby conceivably providing a further motive to Salgam and/or Plaintiff to fabricate the phony emails. It is also notable that neither Salgam nor Plaintiff retained their original counsel to prosecute this case. This may have been in part an effort to propagate fraud. The new counsel that they jointly retained to prosecute this action would not have been privy to the information disclosed previously, which may have contradicted what Plaintiff or Salgam was presently telling him, therefore making new counsel an unwitting agent of fraud on the court.

5. **Depositions of Plaintiff, Salgam, their former joint attorneys, and their former, respective attorneys used to make demands on Assyst in 2013 and 2014, concerning the aforementioned topics.**

6. **Subpoenas duces tecum concerning the aforementioned topics to Plaintiff's and Salgam's respective, email service and storage providers.**

7. **Further discovery, as appropriate, concerning the aforementioned topics.**

---

[20] Salgam's and Plaintiff's demand letters and Assyst's responses, without exhibits, are attached as Exhibit 12.  Notably, Assyst's letter in response to Plaintiff's demand contains a preservation notice.

19

Such discovery would yield important information concerning the fraud at issue. The fact that some of the discovery sought would necessarily seek communications and other documents among co-plaintiffs and their former attorneys would not be futile due to the "crime-fraud" exception to the attorney-client privilege and the work product doctrine. To pierce privilege based on the "crime-fraud" exception, a party need only make a *prima facie* showing that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing [the privileged materials] . . . bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Subpoena*, 870 F.3d 312, 319 (4th Cir. 2017) (citations omitted). Using an attorney as a conduit to commit fraud does not serve as a shield. *See Int'l Med. Grp., Inc. v. Walker,* No. 1:08-CV-923-JMS-TAB, 2011 WL 1752101, at *3 (S.D. Ind. May 9, 2011) (noting that "[u]se of counsel to perpetuate fraud waives the attorney-client privilege" in determining that crime-fraud exception applied to communications between party and former counsel when party was alleged to have engaged in discovery fraud).

Here, a fraud has certainly been committed. It was committed at least in the drafting of the Complaint, which contains fake information, and during the course of discovery when the fraudulent emails were produced. In fact, in the aforementioned *Suntrust* case from the Eastern District of Virginia, the parties litigated the extent to which the victimized party could discover evidence of the fraud that had occurred. The fraud in that case also included referencing a fake email in the complaint. *Suntrust*, 2011 WL 1225989, at *8-9. During the course of the hearing on the motion to compel evidence of the fraud, the Court observed:

> The crime-fraud exception is what opens the door to a reasonable examination in the scope of finding out what happened and how the fraud was used and/or perpetrated, and in this instance, it seems to me, that what there has been a prima facie showing of is that the

20

> fraudulent e-mails were used to prepare the original complaint, i.e.,
> that's how this lawsuit got started or a significant part of it.[21]

The court later stated that "the first thing is [the moving party] [is] entitled to figure out exactly what it is that has happened." Hr'g Tr. 27:13-14.  The Court then ruled that the party in question needed to produce, *inter alia*, documents related to the fake emails. Hr'g Tr. 41:1-43:16, Appendix B. Consequently, discovery on the topic of this fraud will not be protected by claims of privilege.

Without waiting for the issuance of discovery, Plaintiff should be ordered to disclose immediately the present contact information he has for Salgam.

**D. In light of the gravity of the fraud upon the court committed and the importance of bringing it further to light, good cause exists for a continuance.**

The granting of the additional discovery requested above would require a continuance of the trial date and the corresponding pre-trial deadlines. Although Assyst would conduct discovery and subsequently file any corresponding motion for sanctions promptly, doing so will take a substantial amount of time. Assyst will need to serve written discovery, wait for responses, and then conduct depositions.[22] At the conclusion of discovery, Assyst will file its motion for sanctions. Like many other courts, this Court may desire to have an evidentiary hearing on the sanctions motion.

There is good cause justifying such a continuance. *See* Local Civ. R. 7(G). First, a ruling by this Court with regard to sanctions could substantially affect the case, such as obviating it by dismissal, determining relevant facts, precluding contest over particular factual and legal issues, or, if the case survives to trial, requiring particular jury instructions. Second, additional discovery

---

[21] The excerpts from the hearing, as well as the Appendix B containing the documents that the court ordered to produce, are attached hereto as Exhibit 13.
[22] In order to expedite the process, this Court could order that Plaintiff respond to written discovery to him within an expedited period.

21

into this matter is consistent with the truth-finding function of this Court. A complete understanding of the extent of the fraud at issue should be had before this matter is rushed to its conclusion. It cannot be assumed that the fake "emails" and the corresponding interrogatory answers, testimony, and document productions constitute all the instances of fraud that have been committed; it is entirely possible that additional instances of fraud have occurred. Finally, Assyst acted swiftly upon detecting the fraud, bringing the matter to opposing counsel's attention just a day after its discovery and filing this Motion six days later.

For these reasons, this matter should be stayed until discovery into the fraud can be had and any sanctions motion is ruled on.

### E. Plaintiff should be ordered to preserve all evidence and pay for imaging both his and Assyst's devices.

This Court should issue a preservation instruction to Plaintiff. While Plaintiff has denied fabricated emails he has produced, he has repeatedly used such emails throughout this case. He has sworn to their veracity and produced them in discovery all to bolster his claims that he repeatedly asked about, and Assyst refused to provide, information regarding his stock options—claims which Assyst unequivocally denies. The alteration of emails naturally implicates issues of spoliation.

Plaintiff cannot be trusted. Plaintiff was already ordered to pay $750.00 for not producing certain documentation, including material exchanges he had with Salgam after his employment was terminated with Assyst for embezzlement. An order of preservation is warranted.

As part and parcel to the order directing preservation, Plaintiff should be specifically ordered to make a forensically qualified image of his current electronic devices, including his phone, where, for example, he may have communications with Salgam.

22

Further, Plaintiff should be ordered to pay for the cost of Assyst preserving electronically-stored information, including by imaging devices that store emails demonstrating that the fake "emails" are indeed a fraud, as appropriate.  In its letter to Plaintiff's counsel on November 1, 2018, concerning the fraud, Assyst requested that Plaintiff stipulate to the falsity of the fake "emails" and the accuracy of its own emails. Plaintiff has not done so. Plaintiff may be seeking to challenge the authenticity of the actual emails. Consequently, to forestall any technical objection, Plaintiff should pay for Assyst to make a forensically qualified image of its device(s) as Assyst may so choose. *See Peskoff v. Faber*, 251 F.R.D. 59, 61-62 (D.D.C. 2008) (assessing, *inter alia*, the party responsible for having to conduct forensic examination in allocating its cost).

## IV.   CONCLUSION

A grave offense has been committed against this court that undermines its fundamental purpose to administer justice grounded in truth.

**WHEREFORE** Assyst requests that its Motion be granted, that all relief requested therein and in this Memorandum be granted, and that this Court grant Assyst all further relief deemed just and proper.[23]

---

[23] This Motion is not intended to constitute as a waiver of any rights or remedies by Assyst to seek sanctions resulting from the fraud, including, without limitation, dismissal of this proceeding and an award of fees and costs, including its fees and costs with regard to this Motion.

Respectfully submitted,

_____ /s/ _____
Timothy McConville, VSBN 40099
Luke Archer, VSBN 81815
PRAEMIA LAW, PLLC
11710 Plaza America Drive, Suite 2000
Reston, Virginia 20190
(703) 624-1776 (McConville telephone)
(931) 588-8018 (Archer telephone)
(703) 871-5111 (facsimile)
Timothy.McConville@praemialaw.com
Luke.Archer@praemialaw.com
*Co-counsel for Advanced Software Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2018, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will then send notification of this filing to the following filing users:

Robert Stone Porter, IV, Esq., VSB # 78934
THE SPIGGLE LAW FIRM
4830 31st Street South, Suite A
Arlington, VA 22206
(202) 449-8527 (telephone)
(202) 540-8018 (facsimile)
rporter@spigglelaw.com
*Counsel for Plaintiff Munusamy Kandasamy*

_____ /s/ _____
Luke Archer

24