**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| MUNUSAMY KANDASAMY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 1:18-cv-00029 (AJT-TCB)** |
| ) | |
| ADVANCED SOFTWARE ) | |
| SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF ASSYST'S MOTION TO COMPEL**

**I.  BACKGROUND**

**A. Procedural background.**

On November 16, 2018, this Court granted (Dkt. 57) Assyst's Motion to Compel Limited Discovery and to Stay Due to Fraud Upon Court (Dkt. 50). In the motion, Assyst requested that the case be stayed and a special period of limited discovery be granted due to the discovery of a fraud upon this Court. Specifically, Plaintiff and former plaintiff Rajender Salgam repeatedly used and relied upon fake "emails" in the prosecution of this matter since its inception in January 2018. The fake "emails" purportedly supported Plaintiff's and Salgam's core allegations that they repeatedly asked for information concerning their stock options and that Assyst wrongfully failed to provide such information. Assyst denies these allegations. Assyst's Memorandum in Support of the Motion to Compel Limited Discovery and to Stay Due to Fraud Upon the Court (Dkt. 51) (the "**Memorandum**") contains a thorough recitation of the fraud that occurred based on the facts known at the time concerning the fraud.

After the November 16, 2018, hearing, Assyst issued discovery requests related to the fraud. On November 20, 2018, Assyst served Plaintiff with discovery requests, including a set of requests for production of documents. A day later, Assyst issued subpoenas for documents to Salgam, the Erlich Law Office, who served as Plaintiff and Salgam's former counsel in this case, and Plaintiff's former counsel from Bean, Kinney & Korman, P.C. in 2014. Consistent with its stated intention in the Memorandum, Assyst also issued a subpoena for documents (the "**Subpoena**") to Charlson Bredehoft Cohen & Brown, P.C. ("**Charlson Bredehoft**"). *See* Exhibit 1 (Subpoena to Charlson Bredehoft).

B. **Salgam's fraud upon the Court began during Charlson Bredehoft's representation of him.**

Charlson Bredehoft represented Salgam in 2013 concerning the issues raised in this case. On April 5, 2013, Charlson Bredehoft sent a demand letter on behalf of Salgam to Assyst. The letter claimed, in part, that:

> In 2011, Mr. Salgam notified Assyst's Management and Human Resources department that Assyst was in violation of the terms of the Agreement by not providing the stock. **This notice was done verbally and via written emails.** Despite being notified of this breach of the Agreement, Assyst never provided Mr. Salgam with clear direction on how to obtain the vested stock shares.

*See* Exhibit 2 (April 5, 2013 letter and April 17, 2013 response) (emphasis added). The letter failed to attach any of the alleged emails supporting its claims. On April 17, 2013, Assyst, through counsel, responded to the demand letter, stating that the stock options were granted and that they had never been exercised and denying all liability. *See* Exhibit 2.

Less than a year later, Salgam fed similar allegations to Plaintiff. On February 12, 2014, Plaintiff emailed to Salgam a worksheet titled "Contesting Items," which he claimed showed the items involving Assyst that "we are contesting." The Contesting Items worksheet included a sub-

2

sheet entitled "Events Timeline." In his email, Plaintiff directed Salgam, "You have to fill up the Event timeline. Please take a look and let me know." The worksheet appears that it may have been work product, created with the intention that Plaintiff, as opposed to Salgam, would complete and send it to Plaintiff's original attorney at Bean, Kinney & Korman. *See* Exhibit 3 ("Contesting Items" email to Salgam). Notably, the description in the Contesting Items worksheet relating to stock options did not include any assertion that Plaintiff or Salgam requested stock option information from Assyst.

Plaintiff admits that Salgam then filled up the sheet for Plaintiff. In the Events Timeline on the Contesting Items worksheet, Salgam included, in part, the following allegations, stating:

| August 2010 | Request for Earnout payments, Stock Options. | No response from Assyst management/CEO |
|---|---|---|
| Nov 2010 | Request for Earnout payments, Stock Options. | No response from Assyst management/CEO |
| Jan 2011 | Request for a Stock Options. | No response from Assyst management/CEO |
| Nov 2011 | Request for Stock Options. | CEO said he will send us the paperwork but no response |

*See* Exhibit 4 (completed Contesting Items worksheet). When feeding the Events Timeline to Plaintiff in response to Plaintiff's request, Salgam did not send to Plaintiff or reference any emails in support of his claims, including the fake "emails."

Plaintiff admits to forwarding the Salgam-completed timeline to his counsel on March 4, 2014. *See* Exhibit 5 (Plaintiff's Answer to Interrogatory 34, excerpt) ("On March 4, 2014, I emailed Ms. Harper the 'contested items' document, which included a timeline, which Mr. Salgam had completed, of events relevant to my claims, including requests for stock options."). Plaintiff's

transmittal email to his counsel did not suggest that Plaintiff informed his counsel that Salgam had completed the sheet for him.[1] *See* Exhibit 6 (March 4, 2014 email) (*sans* attachments).

The itemization of alleged requests for stock options provided by Salgam and adopted by Plaintiff in the Contesting Items sheet in 2014 is at odds with the allegations of requests for stock options and stock option information made by both Salgam and Plaintiff in this case. **For example, the dates on the fake "emails" are largely from 2012, while the itemization of requests on the Contesting Items sheet lists only occasions in 2010 and 2011**.[2] Moreover, in his interrogatory answers, Salgam identified alleged requests about exercising his stock options in November 2010, January 2011, March 2011, June 2011, August 2011, and at "at least" twice between June 2011 and December 2012, as opposed to **requesting his stock options themselves in August 2010, November 2010, January 2011, and November 2011**, as listed on the Contesting Items sheet. *See* Exhibit 8 (Salgam's answer to Interrogatory 4). Similarly, in his interrogatory answers, Plaintiff identified, in part, alleged inquiries about his stock options in or around March 2010, May 2012, August 2012, and an unidentified time before August 2013, and during his deposition, Plaintiff testified in part that he asked an Assyst executive for the stock option plan "every time" he saw him. *See* Exhibit 9 (Plaintiff's answer to Interrogatory 4 and deposition excerpt).

The fake "emails" constitute the entire known universe of documentary evidence that expressly supports Plaintiff's and Salgam's contention that, before 2013, they inquired about their stock options in attempts to avail themselves of the stock options but were thwarted in doing so. To date, there is no evidence received in discovery of the fake "emails" existing during this 2013

---

[1] As has been detailed in previous filings, Plaintiff similarly directed Salgam to fill up certain factual events in this case. *See, e.g.,* Dkt. 71, p. 5-6 (timeline of Plaintiff's direction to Salgam to answer discovery questions for him).

[2] The only fake "email" dated before 2012 is the fake "email" created from whole cloth, as opposed by doctoring a true email, which was attached to Plaintiff's and Salgam's Complaint as Exhibit D.

4

and 2014 time period. At this juncture, the first evidence of the existence of the fake "emails" comes from a privilege log filed by the Erlich Law Office in response to the subpoena issued to it. The log, in part, shows that Salgam, sent to the Erlich Law Office fake "emails" as early as December 12, 2017, and January 3, 2018. *See, e.g.,* Dkt. 60-1, p. 2 (privilege log demonstrating transmission of fake "emails").

C. **Charlson Bredehoft's response to the Subpoena and this Court's ruling on November 16, 2018.**

On December 21, 2018, Charlson Bredehoft served its response to the Subpoena, which included a responsive pleading, a privilege log, and a production of documents, many of which contained claimed privilege or work product redactions. *See* Exhibit 9 (Charlson Bredehoft's responsive pleading and privilege log); Exhibit 10 (redacted documents from Charlson Bredehoft's document production).

According to its pleading, Charlson Bredehoft does not have documents responsive to any of the ten requests except for Requests 6 and 10. Included among the requests without responsive documents are requests specifically seeking documents concerning the fake "emails" and the true emails that were doctored to create some of them. *See* Requests 1-5. Consequently, it can be presumed that Salgam never sent to Charlson Bredehoft any of the fake "emails" or any of the actual emails upon which any of the fake "emails" were based.

The two requests at issue are Requests 6 and 10 (the "**Requests**"). These are the only requests to which Charlson Bredehoft has claimed to have responsive documents that are being withheld. The Requests and corresponding responses are as follows:

> 6. All documents concerning or referencing Plaintiff's or Rajender Salgam's alleged requests to Assyst for information regarding their stock options or their alleged attempts to exercise their stock options.

5

RESPONSE: Charlson Bredehoft objects to this Request to the extent it seeks documents and communications between Charlson Bredehoft and Mr. Salgam, as well as documents relating to those same communications, which are protected by the attorney-client privilege and the doctrine of litigation work product and would require disclosure of core opinion work product and mental impression of counsel, which is prohibited by Fed. R. Civ. P. 26(b)(3). Subject to and without waiving these objections, Charlson Bredehoft produces the following non-objectionable documents: CBl-246.

. . . .

10. All documents, including communications, concerning the specific evidence, types of evidence, quantum of evidence, or lack of evidence supporting Plaintiff's or Mr. Salgam's claim that Plaintiff or Mr. Salgam allegedly attempted to exercise their Assyst stock options or attempted to request information relating to their stock options.

RESPONSE: Charlson Bredehoft objects to this Request to the extent it seeks documents and communications between Charlson Bredehoft and Mr. Salgam, as well as documents relating to those same communications, which are protected by the attorney-client privilege and the doctrine of litigation work product and would require disclosure of core opinion work product and mental impression of counsel, which is prohibited by Fed. R. Civ. P. 26(b)(3). Charlson Bredehoft further objects to this Request on the grounds that it is overly broad, unduly burdensome, and that the information sought is neither relevant to any issue in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence. Charlson Bredehoft further objects to this Request on the grounds that it its compound requests vague, ambiguous, and confusing as to the documents they seek. Subject to and without waiving these objections, Charlson Bredehoft produces the following non-objectionable documents: CBl-246.

Charlson Bredehoft's privilege log indicates that it has withheld or redacted thirty-nine documents responsive to these requests on the basis of attorney-client privilege or the work product

doctrine. These documents and the corresponding redactions included in the documents already produced are the subject of this Motion to Compel.[3]

Notably, Assyst submitted similar requests for production to Plaintiff as it did to Charlson Bredehoft. Specifically, Assyst requested that Plaintiff produce:

> 55. All communications to which you or Rajender Salgam were parties concerning, referencing, or relating to your or Mr. Salgam's alleged requests to Assyst for information regarding your or his stock options or your or Mr. Salgam's alleged attempts to exercise your or his stock options.
>
> 56. All documents concerning or referencing your or Rajender Salgam's alleged requests to Assyst for information regarding your or his stock options or your or Mr. Salgam's alleged attempts to exercise your or his stock options.
>
> . . . .
>
> 64. All communications between or among you, Rajender Salgam, and/or your former attorney(s) concerning the specific evidence, types of evidence, quantum of evidence, or lack of evidence supporting your claim that you allegedly attempted to exercise your Assyst stock options or attempted to request information relating to stock or stock options.

*See* Exhibit 11 (Assyst's Third Requests for Production of Documents to Plaintiff).

This Court has indicated that responses to these requests to Plaintiff would not contain protected information due to the crime-fraud exception. At the November 16, 2018, hearing on Assyst's Motion to Compel against Plaintiff, which implicated, in part, these three discovery requests, this Court observed:

> . . . But my point is that the communications with counsel that convey information that are the subject matter of these—of these

---

[3] Assyst and Charlson Bredehoft telephonically met and cordially conferred on this issue on January 2, 2019; however, in light of the ethical issues involved in producing such documents without a court order, it was understood that little could be done to resolve the issue between them because Salgam had not expressly waived any arguably applicable privilege and had not given permission to Charlson Bredehoft to produce the requested documents.

7

> discover [sic] requests cannot be subject to—cannot be withheld based and [sic] privilege because of the crime fraud exception.

*See* Exhibit 12 (Transcript from 12/14/2018 hearing, p. 6:9-13). The Court later stated:

> **I've already decided that. I've already decided that because of the crime fraud exception the privilege does not apply.** That was already decided when I allowed these—the discovery into this area. . . . So the privilege is already gone in my view. When—when the defendants asked for permission to conduct discovery, I decided at that point, and I believe it's in the record, that because of the crime fraud exception here this discovery needed to be allowed of his communications with counsel and what his counsel received from him. So, I'm going to strike your objections. I believe that all of the discovery that's been propounded I appropriate. **I don't think it's overbroad, and so I don't expect to see any documents withheld on the basis of privilege or for any other reason.**

*Id.* at 7:8-23 (emphasis added).

## II. ARGUMENT

Charlson Bredehoft objects to Requests 6 and 10 on the basis of (1) the attorney-client privilege and (2) the work product doctrine. The crime-fraud exception obviates Charlson Bredehoft's objections based on privilege and work product. Furthermore, Charlson Bredehoft's objection to Request 10 on the basis of it allegedly being overly broad, unduly burdensome, irrelevant, vague, ambiguous, and confusing also fails.

### A. **Charlson Bredehoft's objections on the basis of attorney-client privilege fail due to the crime-fraud exception, as has been previously recognized by this Court.**

Charlson Bredehoft objects to producing the requested documents on the basis of attorney-client privilege. Specifically, all documents listed in the privilege log are either withheld or redacted on the basis of privilege with the exception of Document #38. A party asserting the attorney-client privilege bears the burden of demonstrating the following elements:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in

8

>connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 443 (E.D. Va. 2018) (citation omitted).

The privilege may be lost "when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings*, 401 F.3d 247, 251 (4th Cir. 2005). A party "invoking the crime-fraud exception must make a *prima facie* showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id.* The logged documents for which production are sought fit squarely within the crime-fraud exception to the privilege.

Regarding the first factor, Salgam's communications with Charlson Bredehoft were part and parcel of a fraudulent scheme present from the outset of Charlson Bredehoft's representation and continuing throughout. As discussed above, there are significant discrepancies among Salgam's allegations in 2013, the allegations he fed to Plaintiff in 2014, and his claims in 2018, which included the manufactured fake "emails." Moreover, as evidenced by Charlson Bredehoft's production and privilege log, Salgam failed to produce to Charlson Bredehoft any documentary evidence showing repeated, failed requests to exercise stock options or for stock option information. These facts show that, as early as 2013, Salgam was manufacturing claims against Assyst, which reached a high watermark on or around December 2017 when the fake "emails" seem to have first appeared.

9

As for the second factor, the documents withheld are related to the fraud at issue. Requests 6 and 10, *see supra* p. 6, generally seek information concerning Plaintiff's or Salgam's alleged attempts to exercise their Assyst stock options or alleged attempts to request information relating to their stock options. As demonstrated above by the ever-shifting narratives and attempts to bolster these claims with fake "emails," these allegations are permeated by fraud. Charlson Bredehoft logged the documents at issue in response to Requests 6 and 10, thereby indicating that they are responsive to the requests. In other words, by listing the documents at issue on its privilege log and identifying them in its pleading as responsive, Charlson Bredehoft is acknowledging the documents' responsiveness to Requests 6 and 10.

Moreover, as described above, *supra* p. 7-8, this Court's previous rulings essentially provide that the crime-fraud exception applies to the information sought in this Motion. At the November 16, 2018, hearing on Assyst's Motion to Compel against Plaintiff, this Court stated that the crime-fraud exception applied to requests for production of documents to Plaintiff that are not meaningfully different from Requests 6 and 10. *Compare* Requests for Production to Plaintiff 55-56, 64 *with* Subpoena Requests 6, 10. Consequently, the Court's previous rulings support a finding that the crime-fraud exception applies.

**B. The crime-fraud exception vitiates any work product protection, and Assyst is also entitled to the requested documents on the basis of substantial need.**

Charlson Bredehoft objects to various documents on the basis of the work product doctrine. The work product doctrine "protects an attorney's work done in preparation for litigation by confer[ring] a qualified privilege on documents prepared by an attorney in anticipation of litigation." *United States v. Frostman*, 221 F. Supp. 3d 718, 725 (E.D. Va. 2016) (citations omitted). Like the attorney-client privilege, it too may be lost, however, "when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re*

*Grand Jury Proceedings,* 401 F.3d at 251; *see also In re Sealed Case,* 676 F.2d 793, 812, n.74 (D.C. Cir. 1982) ("Once a sufficient showing of crime or fraud has been made, the privilege vanishes as to all material related to the ongoing violation").

The Fourth Circuit treats fact work product and opinion work product differently for purposes of the crime-fraud exception. A "similar standard" is used to vitiate fact work product opinion as is used to vitiate the attorney client privilege. *See Grand Jury Proceedings,* 401 F.3d at 252 (fact work product "may be discovered upon *prima facie* evidence of a crime or fraud as to the client only and thus even when the attorney is unaware of the crime or fraud"). In contrast, if seeking opinion work product, a party must make a *prima facie* showing that the "attorney in question was aware of or a knowing participant in the criminal conduct." *Id.* (citing *In re Doe*, 662 F.2d 1073, 1079 (4th Cir. 1981)). However, if a *prima facie* showing cannot be made as to the lawyer's knowledge or complicity, the obligation to respond to a subpoena does not just terminate. Instead, "if the attorney was not aware of the criminal conduct, a court must redact any portions of subpoenaed materials containing opinion work product." *Id.* With the possible exception of Document #38 from Charlson Bredehoft's privilege log for which it has asserted its mental impressions, Charlson Bredehoft has not specifically asserted opinion work product as the basis for its claim of work product protection. "Fact work product consists of 'documents prepared by an attorney that do not contain the attorney's mental impressions,' while opinion work product 'contains th[e] fruits of an attorney's mental processes.'" *Frostman,* 221 F. Supp. 3d at 726 (citation omitted).

The crime-fraud exception defeats any fact work product objections for the same reasons it defeats any attorney client-privilege, as argued in Section II(A), and the withheld documents should be produced. To the extent that Document #38 is determined to be opinion work product


by Charlson Bredehoft personnel and such an objection has been advanced, any portions of the document containing opinion work product should be redacted and fact work product should be preserved. *See Grand Jury Proceedings,* 401 F.3d at 252. This preserved information could include, for example, factual accounts of Plaintiff's or Salgam's alleged requests for stock option information or documents showing an absence of such factual accounts or evidence.

Moreover, Charlson Bredehoft claims work product protection for a few documents which Salgam may have authored. *See, e.g.,* Privilege Log Document #39. It could not be argued that Salgam, who authored the claimed protected material was not "aware" of the wrongful activity. *See In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994) (requiring redactions of "any portions of the subpoenaed materials containing the **attorney's** opinion work product" when *prima facie* case not made against attorney) (emphasis added). For such documents, the creator of the opinion work product would be Salgam, who clearly had knowledge of fraud; therefore, a sufficient *prima facie* showing of knowledge has been made as to any opinion work product found to be created by Salgam.[4]

Finally, as an independent ground of vitiating fact work product protection in addition to the crime-fraud exception, Assyst may obtain the documents on the basis of showing substantial need for them and an inability to secure the material elsewhere. *See In re Grand Jury Proceedings*, 401 F.3d at 253, n. 4 ("A court may also order fact work product produced, without invoking the crime-fraud exception, if the party opposing the privilege demonstrates a substantial need for the material and an inability to secure the substantial equivalent of the materials elsewhere without undue hardship") (citing *In re Grand Jury Proceedings*, 33 F.3d at 348). Here, the fraud upon the

---

[4] Assyst does not admit that any such information drafted by Salgam constitutes fact or opinion work product in the first place.

Court was accomplished through the lengthy preparation of the claims. Moreover, in response to the subpoena issued to him, Salgam admitted to destroying much of the documents he had concerning this case after his dismissal from it in September 2018 and therefore apparently does not possess many of the documents requested. Consequently, the information requested is relevant to the fraud and could not be obtained elsewhere.

C. **Charlson Bredehoft's objection to Request 10 on the basis of it allegedly being overly broad, unduly burdensome, irrelevant, vague, ambiguous, and confusing fails.**

Request 10 seeks: "[a]ll documents, including communications, concerning the specific evidence, types of evidence, quantum of evidence, or lack of evidence supporting Plaintiff's or Mr. Salgam's claim that Plaintiff or Mr. Salgam allegedly attempted to exercise their Assyst stock options or attempted to request information relating to their stock options." The request clearly seeks documents regarding the evidentiary basis of the fraudulent allegations concerning stock option requests. Consequently, the objections on this basis to Request 10 should be stricken.

D. **Charlson Bredehoft should be ordered to produce any documents by January 11, 2019, in light of this Court's directive to complete discovery within sixty days and Salgam's deposition currently scheduled for January 14, 2019.**

At the November 16, 2018, hearing, this Court directed that discovery be completed within sixty days. Consistent therewith, Assyst has negotiated with Salgam to take his deposition on January 14, 2019. Consequently, Charlson Bredehoft should be ordered to produce its documents exchanged with Salgam no later than January 11, 2019, if at all possible.

Assyst worked promptly to bring this Motion. At Charlson Bredehoft's request, Assyst agreed to extend the compliance date for the Subpoena from December 13, 2018, to December 21, 2018. Further, Assyst initially tried to get this matter scheduled for January 4, 2019; however, when Charlson Bredehoft indicated it was unavailable to attend a hearing on January 4, 2019, it was agreed to schedule the hearing for January 11, 2019.


### III. CONCLUSION

**WHEREFORE** Assyst requests that its Motion be granted, that all relief requested therein and in this Memorandum be granted, and that this Court grant Assyst all further relief deemed just and proper.

Respectfully submitted,

_____/s/_____
Timothy McConville, VSBN 40099
Luke Archer, VSBN 81815
PRAEMIA LAW, PLLC
11710 Plaza America Drive, Suite 2000
Reston, Virginia 20190
(703) 624-1776 (McConville telephone)
(931) 588-8018 (Archer telephone)
(703) 871-5111 (facsimile)
Timothy.McConville@praemialaw.com
Luke.Archer@praemialaw.com
*Counsel for Advanced Software Systems, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 4, 2019, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will then send notification of this filing to the following filing users:

Robert Stone Porter, IV, Esq., VSB # 78934
THE SPIGGLE LAW FIRM
4830 31st Street South, Suite A
Arlington, VA 22206
(202) 449-8527 (telephone)
(202) 540-8018 (facsimile)
rporter@spigglelaw.com
*Counsel for Plaintiff Munusamy Kandasamy*

Jacob M. Small, Esq., VSB # 84460
J. Madison PLC
1750 Tysons Blvd., Suite 1500
McLean, Virginia 22102
(703) 910-5062 (telephone)
(703) 910-5107 (facsimile)
jmsmall@jmadisonplc.com
*Counsel for Plaintiff Munusamy Kandasamy*

I also sent the foregoing by electronic mail on January 4, 2019, to:

Elaine Bredehoft
Peter Cohen
Carla Brown
David Murphy
11260 Roger Bacon Drive,
Suite 201 Reston, VA 20190
Phone: (703) 318-6800
Fax: (703) 318-6808
ebredehoft@charlsonbredehoft.com
pcohen@charlsonbredehoft.com
cbrown@charlsonbredehoft.com
dmurphy@cbcblaw.com

                                                      /s/
                                           Luke Archer