IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RAJENDER K. SALGAM, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:18-cv-00029 (AJT/TCB) |
| ) | |
| ADVANCED SOFTWARE ) | |
| SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Defendant Advanced Software Systems, Inc. ("Assyst") and Plaintiff Munusamy Kandasamy ("Kandasamy") have moved for sanctions against Plaintiff Rajender Salgam. [Doc. Nos. 89, 93] (together, the "Motions").[1] Both Motions are predicated on Salgam's production in discovery of fabricated emails in support of his and Kandasamy's claims against Assyst. Assyst seeks all of its litigation costs and expenses, including attorney's fees in defending this litigation; and Kandasamy, his substantial attorneys' fees in responding to Salgam's fraud. For the reasons stated below, Defendant Assyst's Motion for Sanctions Against Rajender Salgam and for Rule 54(b), 59(e), and 60(b) Relief [Doc. No. 89] is GRANTED in part; and Plaintiff Kandasamy's Motion for Sanctions Against Rajender Salgam [Doc. No. 93] is DENIED.

**I. BACKGROUND**

In this action, Salgam and Kandasamy claimed that Assyst breached their employment agreements by obstructing the exercise of their Assyst stock options issued in connection with

---

[1] Also pending is Plaintiff Salgam's Motion for Leave to File Opposition to Assyst's and Plaintiff Kandasamy's Motions for Sanctions [Doc. No. 135], filed on May 31, 2019, the day of the hearing on both Motions, which the Court will grant. The Court has accordingly considered the Memorandum of Opposition to Defendant Assyst's and Plaintiff Kandasamy's Motions for Sanctions [Doc. No. 136-1].

1

the sale of their company, Leading Consultants, Inc. to Assyst on October 30, 2009. [Doc. No. 1] ¶¶ 111–13; 126–28; [Doc. No. 90] at 5.  The central issue in this action pertained to when Salgam and Kandasamy received certain information regarding the expiration date of their stock options, and whether Assyst improperly concealed such information from Plaintiffs until those options expired on October 29, 2012.  Plaintiffs alleged in that regard that despite their "repeated requests" for such information, they did not receive information about the expiration date of these stock options at closing, or at any time before their expiration.  *See* [Doc. No. 1] ¶ 67.  Defendant Assyst claimed that it had provided this expiration information to Plaintiffs at closing on October 30, 2009 and thereafter, and never failed to provide information to Plaintiffs when they requested it.  [Doc. No. 90] at 5.

This case was filed January 5, 2018.  [Doc. No. 1].  A Motion to Dismiss was filed by Assyst on April 16, 2018, [Doc. No. 5], and was taken under advisement on May 11, 2018, [Doc. No. 16].  On September 8, 2018, while the Court's decision was pending, all parties filed a Stipulation of Dismissal with Prejudice pursuant to Fed. R.Civ. P 41(a)(1)(A)(ii).  [Doc. No. 25] (the "Stipulation").  That Stipulation dismissed with prejudice Salgam's claims (but not Kandasamy's) against Assyst with Salgam to "bear his own attorney's fees and costs and none other in this action." *Id.*  The Court "So Ordered" the Stipulation on September 10, 2018 [Doc. No. 26].

On November 7, 2018, after the close of discovery, Assyst filed a Motion to Compel Limited Discovery and to Stay Due to Fraud Upon the Court [Doc. No. 50] based on evidence that Salgam and Kandasamy had produced fraudulent documents in discovery.  On November 16, 2018, the Court granted the Motion to Compel and Assyst was given sixty days to conduct the requested limited discovery.  *See* [Doc. No. 57].

2

On January 26, 2019, Assyst and Kandasamy filed a Joint Motion for Entry of Dismissal, dismissing all the remaining claims in this matter, which the Court granted. [Doc. Nos. 87, 88]. On February 12, 2019, Assyst filed its Motion for Sanctions Against Rajender Salgam and for Rule 54(b), 59(e), and 60(b) Relief [Doc. No. 89], and Kandasamy filed his Motion for Sanctions Against Rajender Salgam [Doc. No. 93], claiming that as a result of the discovery into Assyst's fraud allegations, his funds were depleted and he was forced to dismiss his case for lack of funds. [Doc. No. 94] at 3.

On February 25, 2019, the Court vacated the Court's "So Ordered" Stipulation of Dismissal, *see* [Doc. No. 26], reinstated Salgam as a party to the action by striking his Stipulation of Dismissal, *see* [Doc. No. 25], and directed Salgam to respond to the Motions. [Doc. No. 96]. The Court held a hearing on the Motions on May 31, 2019.[2]

**A.     The Falsified Emails**

As a result of the limited discovery, Assyst has identified six altered or fabricated emails, five of which were produced to Defendants in discovery in support of Plaintiffs' claims.

The first email, Email 1, was allegedly sent on November 15, 2011, by Salgam to Assyst Human Recourses Manager Judith Bounacos. That email changed "Want to understand what does the cash value mean? Is this separate from *the 401K plan*?" (emphasis added), which appeared in the original email, to "Want to understand what does the cash value mean? Is this separate from *the company stock options plan*?" (emphasis added), which appeared in the altered email. [Doc. No. 90-1] at 1; *see, e.g.*, [Doc. No. 90-10]. Plaintiffs did not present Email 1 in support of their claims in this action. Rather, in 2013, Salgam retained counsel to pursue his

---

[2] That same day, after a series of motions for extensions of time to conduct discovery and file his oppositions to the Motions, most of which were denied, [Doc. Nos. 99, 102, 106, 122, 126, 133, 135], Salgam requested leave to file his opposition to the Motions out of time. [Doc. No. 135]. By this Order, the Court grants that motion.

3

stock option claims against Assyst and provided to that counsel Email 1, which his counsel used in connection with a demand letter sent to Assyst on April 15, 2013.  [Doc. No. 90-10].[3]

The second email, Email 2, was attached as Exhibit D to the Complaint, [Doc. No. 1-4]. In this email, in August 2011, Salgam stated:

> "Sunil was in NJ office a few days ago and I informed him that I would like to exercise my vested stock options granted to me in my offer letter dated oct-30-2009. He told me that I should get in touch with HR manager and obtain the forms that need to be filled out. Please send these forms and any related documents," to which Bounacos responded "I should have this information sent to you by Monday."

[Doc. No. 90-1] at 1, 2; *see, e.g.*, [Doc. No. 91-25] at 4.  In the Complaint, Salgam repeats this exchange and alleges he never received the promised documents.  [Doc. No. 1] ¶¶ 56–58.  Assyst asserts that this email was completely fabricated "out of whole cloth."  [Doc. No. 90] at 7.  In support of this charge, Assyst notes that the signature block for Bounacos was not the signature block automatically applied to her emails at the time, as it lists phone and fax numbers that she did not use at the time the email was allegedly sent.  [Doc. No. 90] at 7.  A copy of the email could not be located in Assyst's archived server; and the document metadata for the PDF of the email indicates that it was created, not in August 2011, but on January 3, 2018 at 9:03 a.m., shortly after Salgam received an email from counsel instructing him to provide emails to support the Complaint.  [Doc. No. 90-20] at 2.

The third email, Email 3, dated May 8, 2012 from Sumil Kumar, the then CEO of Assyst, to Kandasamy and Salgam, stated "I did not see any update in the CRM.  *We can discuss employee evaluations and stock options as well*." (emphasis added), whereas the original e-mail stated, "I did not see any update in the CRM as well."  [Doc. No. 90-1] at 2; *see, e.g.*, [Doc. No.

---

[3] The true version of Emails 1, 3, 4, and 5 were located by Assyst's forensic investigator on an old, archived server. *See* [Doc. No. 90] at 6; *see also* [Doc. No. 90-2] at 33 (Email 1), 19 (Email 3), 24 (Email 4), 20–21 (Email 5).

91-25] at 13.  On August 23, 2018, Salgam sent this email to Kandasamy, who attached it to his own discovery responses.

The fourth email, Email 4, sent July 26, 2012 from Salgam to Kumar, copying Kandasamy, stated the topics Salgam planned to cover with Kumar on a call that day.  The original email listed "MetLife, HealthNet, BNY Mellon and others" as the subjects, while the altered email listed "MetLife, HealthNet, BNY Mellon *and also employee vacation time issue and how to exercise stock option grants*." (emphasis added)  [Doc. No. 90-1] at 2–3; [Doc. No. 91-25] at 10.  In August 2018, Salgam produced this email to his then counsel, who later produced it to Assyst's counsel.  [Doc. No. 90-1] at 2–3.  The PDF version provided by Salgam was created at 7:15 a.m. on August 17, 2018.  [Doc. No. 90-20] at 4.

The fifth email, Email 5, was sent August 28, 2012 from Kumar to Salgam and Kandasamy.  The true email stated "Let us meet today at 8:30 am to catch up on all the opportunities"; the falsified email added ". . . and discuss your stock options question."  [Doc. No. 90-1] at 3; *see, e.g.*, [Doc. No. [91-25] at 2.  This email was produced by Salgam to his counsel in August 2018, who then produced it to Assyst.  [Doc. No. 90-1] at 3.  The PDF version of the Email 5 provided by Salgam was created at 7:17 a.m. on August 17, 2018.  [Doc. No. 90-20] at 3.

The sixth email, Email 6, identical in substance to Email 5, was sent by Salgam on August 23, 2018 to Kandasamy for Kandasamy to produce in his own discovery responses. [Doc. No. 90-1] at 3; *see, e.g.*, [Doc. No. 91-25] at 12.

**B.     Use of the Falsified Emails**

As mentioned above, Plaintiffs produced in discovery in support of their claims Emails 2 through 6, all of which appear to have been created after or immediately before the filing of this

5

action.[4]  On January 3, 2018, Salgam provided Email 2 to his counsel and Email 2 was attached to the Complaint filed that same day.  Following the filing of this action, Salgam produced in August 2018 during the regular discovery period Emails 3 through 6 in support of his responses to discovery requests.  [Doc. No. 90] at 15.  Kandasamy also produced Emails 3 and 6 in his discovery responses, which Salgam had drafted for him.  [Doc. No. 90] at 19.[5]

Although lacking personal knowledge, but ostensibly based on Salgam's representations that these emails had been pulled from Assyst's servers and saved on a thumb drive, [Doc. No. 94] at 7, Kandasamy also affirmed in his deposition the authenticity and veracity of these emails, [Doc. No. 91-23] at 119:2–120:8, although he later admitted that his discovery response (drafted by Salgam) concerning a specific interaction he had with Bounacos was not accurate.  [Doc. No. 90] at 19.  Kandasamy also does not dispute that the Emails were altered, but claims, and Assyst does not contest, that he was unaware that the Emails had been fabricated or altered and was similarly duped by Salgam, although he has always believed, and continues to believe, that he was unlawfully denied his stock options.  [Doc. No. 94] at 8.

Defendant Assyst requests that the Court dismiss Salgam's claims with prejudice and award Assyst the entirety of its legal fees and costs incurred in connection with this action, including its prosecution of sanctions, for a total of $330,670.50.  [Doc. No. 90] at 27.

---

[4] The only precise information in the record concerning when any of Emails 2 through 6 were created is that the PDF version of Email 2 was created on January 3, 2018 and the PDF versions of Emails 4 and 5 were created on August 17, 2018. [Doc. No. 90-20] at 2–4. Based on Salgam's producing to his lawyer in April 2013 only Email 1, despite his counsel's request for additional documentation, it can be inferred that Emails 2 through 6 did not exist at that time and were later created or altered. *See* [Doc. No. 90] at 10; [Doc. No. 90-10] (Salgam stating to his lawyer on April 15, 2013 that he "found this email conversation in [his] old emails.").

[5] Kandasamy has explained that between the filing of the suit and the end of the discovery period, he experienced medical issues that caused him to rely on the assistance of his wife and Salgam to formulate his discovery responses when they became due in August 2018. [Doc. No. 94] at 4–6.

## II. ANALYSIS

The Court possesses an inherent authority to sanction litigants who commit fraud upon the tribunal. *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09CV529, 2011 WL 1225989, at *13 (E.D. Va. Mar. 29, 2011), *aff'd sub nom. Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243 (4th Cir. 2013). This Court has the inherent power to impose sanctions when a fraud upon the court has occurred, when "the very temple of justice has been defiled," and when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Fraud must be demonstrated by clear and convincing evidence of wrongdoing. *Suntrust Mortg., Inc.*, 2011 WL 1225989, at *20. "When a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). "Submitting a false discovery document—or fabricating evidence—has been referred to as 'the most egregious misconduct which justifies a finding of fraud upon the Court.'" *Davis v. Crescent Elec. Co.,* No. CIV 12-5008, 2016 WL 1625291, at *3 (D.S.D. Apr. 21, 2016) (citations omitted).

In determining whether dismissal with prejudice or other sanctions are warranted, the Court has considered the following factors: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating

7

harmed persons, and deterring similar conduct in the future; and (6) the public interest." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993).

As to Salgam's culpability, Salgam has provided less-than-credible testimony concerning the Emails. In that regard, during the limited discovery concerning these emails, Salgam testified that he no longer had the original .pst files for Emails 2 through 6 because he "overwrote the files on a thumb drive while he was in India in August 2018 in order to store family pictures." [Doc. No. 90] at 21. He also repeatedly asserted that he did not fabricate or doctor any emails that were produced in this case. *Id.* at 21–22. During a hearing before the Magistrate Judge on May 22, 2019, Salgam claimed that Emails 1 and 2 were "drafts," even though it is clear these altered emails were actually sent to their recipients. [Doc. No. 129], Hr'g Tr. May 22, 2019, at 12:7–13:21. And he could not explain to the Magistrate Judge when asked how these Emails could be drafts when they received a responsive email in return. *Id.* On the other hand, Assyst's evidence that Salgam produced fraudulent emails is compelling; and based on the facts and circumstances, the evidence is clear and convincing that he knowingly did so.

The Court also finds that Salgam, and not his counsel, is responsible for the creation and submission of the fabricated emails to his counsel and opposing counsel over the years; that he acted on his own, without knowledge of or condonation by his counsel; that the falsification of documentary evidence was extremely prejudicial to the judicial process, particularly given that all of the documentary evidence pertaining to Salgam's requests for information regarding the exercise of his stock options appears to be falsified; that Assyst and Kandasamy incurred during this process substantial fees, which were increased by the use of the fraudulent emails; that dismissal is warranted in order to fully rectify this fraud; and the public interest is served by imposing harsh sanctions. For these reasons, the Court will dismiss Salgam's claims with

prejudice. The Court recognizes, however, that before the extent of his wrongdoing became known, Salgam stipulated to a dismissal with prejudice and a disclaimer of liability for any other party's attorney's fees and that a dismissal with prejudice at this point has become essentially a hollow and toothless sanction. The Court has therefore considered whether other sanctions are appropriate, including specifically the monetary sanctions requested by Assyst and Kandasamy.

Any monetary sanction must be compensatory, not punitive—that is, the damages incurred must have been actually "caused by the bad-faith acts on which it is based." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017) (internal citations omitted). Therefore, an award of all attorneys' fees and costs incurred in a case is only permissible if the case itself was brought in bad faith, or if the "entire course of conduct" of the litigant was "fraudulent and brazenly unethical." *Id.* at 1188 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)).

Assyst contends that, based on the record, the case as a whole was brought in bad faith. There is very little doubt that these emails were fabricated, or, at the very least, misrepresented as a dispatched email when it was really just a draft. The record also shows, however, that Salgam's claim, while propped up during the course of litigation by false documentary evidence, was also based on actual stock options he and Kandasamy had received from Assyst in exchange for the sale of their company and verbal conversations he had regarding those options, *see* [Doc. No. 1] ¶¶ 45–51; and that Assyst had refused to honor their exercise. It therefore appears that there was some factual basis for the claim and Salgam decided to fraudulently bolster an otherwise thinly-supported case to increase his chance of winning. There is also no indication, nor does Assyst argue, that Kandasamy's claim was not brought in good faith or that Kandasamy had any knowledge of the falsity of the documents. The Court must therefore determine what

9

expense Assyst incurred because of the use of those emails that it would not have otherwise incurred; and in that regard, the Court cannot conclude based on this record that the Complaint would not have been filed by either Salgam or Kandasamy absent the use of the Emails 2 through 6 used in this action—all but one, it appears, were fabricated or altered approximately eight months after this action was filed.

For the above reasons, the Court concludes that Salgam's conduct warrants monetary sanctions in favor of Assyst, but not for the entirety of Assyst's litigation costs. Rather, the Court will award those fees and expenses incurred after the production of Emails 3 through 6 in August 2018, including specifically, but not limited to, those fees and expenses associated with reviewing and assessing Plaintiffs' discovery responses that contained Emails 3 through 6, investigating the altered Emails, preparing the Motion to Compel Limited Discovery and to Stay Due to Fraud Upon the Court [Doc. No. 50], conducting the discovery during that limited discovery period, and this Motion [Doc. No. 90].[6]

The Court will not award, however, sanctions in favor of Kandasamy. There is no doubt that Salgam caused Kandasamy to incur fees and expenses in responding to Assyst's allegations of fraud; but, for whatever reason, Kandasamy facilitated to a certain degree Salgram's fraudulent conduct, albeit unwittingly, through his deference to Salgam, his acceptance of Salgam's representations, apparently without any investigation, and his unqualified deposition testimony and written discovery responses based on the Emails that proved false, even though he knew that he did not have personal knowledge of what he affirmed under oath in that regard, but he nevertheless essentially vouched for Salgam's truthfulness.

---

[6] The Court recognizes that Email 2, dated August 5, 2011, was used in connection with the initiation of this action. The record is silent, however, as to why Assyst admitted in its Answer that Salgam had sent this Email, as alleged, see [Doc. No. 49] at ¶ 56, and why it took Assyst nearly 11 months to determine that Salgam had fabricated and created the Email "out of whole cloth." [Doc. No. 90] at 7. Without minimizing Salgam's conduct, the Court has considered Assyst's level of diligence in connection with Email 2 in connection with its award of fees.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff Salgam's Motion for Leave to File Opposition to Assyst's and Plaintiff Kandasamy's Motions for Sanctions [Doc. No. 135] be, and the same hereby is, GRANTED; and Plaintiff Salgam's Memorandum of Opposition to Defendant Assyst's and Plaintiff Kandasamy's Motions for Sanctions [Doc. No. 136-1] shall be deemed timely filed; and it is further

ORDERED that Defendant Assyst's Motion for Sanctions Against Rajender Salgam and for Rule 54(b), 59(e), and 60(b) Relief [Doc. No. 89] be, and the same hereby is, GRANTED in part.  It is granted to the extent that the Court finds that monetary sanctions shall be entered against Plaintiff Salgam in favor of Defendant Assyst, in an amount to be decided by the Court after consideration of Assyst's amended fee application, which it shall file with the Court within thirty (30) days of the date of this Order; and it is further

ORDERED that the claims brought by Plaintiff Rajender Salgam be, and the same hereby are, DISMISSED with prejudice; and it is further

ORDERED that Plaintiff Kandasamy's Motion for Sanctions Against Rajender Salgam [Doc. No. 93] be, and the same hereby is, DENIED.

The Clerk is directed to forward a copy of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

July 2, 2020
Alexandria, Virginia